IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

WANDA JO IRWIN, INDIVIDUALLY
AND ON BEHALF OF ALL WRONGFUL
DEATH BENEFICIARIES OF BRADFORD
IRWIN                                                                                           PLAINTIFF

VERSUS                                                          CIVIL ACTION NO. 2:06CV141-P-A

UNITED STATES OF AMERICA                                                        DEFENDANT

**MEMORANDUM OPINION**

This cause is before the Court on the defendant's Supplemental Motion to Dismiss Or, In the Alternative, for Summary Judgment [30]. The Court, having reviewed the motion, the response, the briefs of the parties, the authorities cited and being otherwise fully advised in the premises, finds as follows, to-wit:

FACTUAL BACKGROUND

Wanda Jo Irwin filed this action on August 26, 2006. She seeks recovery under the Federal Tort Claims Act (hereafter "FTCA") and Mississippi Code Annotated § 11-7-13 for the alleged wrongful death of her husband, Bradford Irwin, on October 10, 2003 while he was working on a United States Army Corps of Engineers project in Tallahatchie County, Mississippi.

At the time of his death, Irwin was an employee of J.W.N. Construction (hereafter "JWN"), s subcontractor of Malouf Construction Corporation (hereafter "Malouf"), the general contractor on a Corps of Engineers (hereafter "the Corps") construction project. The project, Contract No. DACW-03-C-0023, was a large scale project which called for channel diversion, excavation,

clearing and grubbing of timber and construction of flood and grade control structures for the Panola-Quitman Floodway and Tillatoba Creek in Tallahatchie County, Mississippi. Malouf contracted the clearing and grubbing phase of the operation to JWN; Irwin was performing duties incident thereto at the time of the accident. Specifically, Irwin suffered a fatal injury when a tree he was excavating fell onto the track hoe he was operating. Plaintiff alleges that the United States is liable for Irwin's death because the Corps permitted the use of excavators without falling objects guards or protection systems ("FOGS" or "FOPS") in felling trees..

As the prime contractor for the project, Malouf assumed responsibility for all aspects of planning and performance of the work; in connection therewith, Malouf was responsible for creating construction schedules setting forth the timing and sequence of the work to be performed.

As with most Corps construction contracts, the contract between Malouf and the Corps incorporated by reference a number of clauses from the Federal Acquisition Regulations. 48 C.F.R., Chapter 1, Part 52. Among the most important are those requiring Malouf to superintend all work performed under the contract, to obtain all necessary licenses and permits, to confine contract operations to authorized areas and to adopt and follow an accident prevention plan.[1]

---

[1] The applicable regulations are set forth below.

52.236-6 SUPERINTENDENCE BY THE CONTRACTOR (APR 1984)

At all times during performance of this contract and until the work is completed and accepted, the Contractor shall directly superintend the work or assign and have on the worksite a competent superintendent who is satisfactory to the Contracting Officer and has authority to act for the Contractor;

52.236-7 PERMITS AND RESPONSIBILITIES (NOV 1991)

The contractor shall, without additional expense to the Government, be responsible for obtaining any necessary licenses and permits, and for complying

2

In addition to the applicable regulations cited supra, the contract also contained certain general contract requirements pertinent to the issues in this case. In particular, paragraph 1.21 of Section 01000 required Malouf to perform daily safety inspections and to document the results of those inspections. As a further matter, section 01451 imposed the responsibility of ensuring quality

---

>   with any Federal, State, and municipal laws, codes, and regulations applicable to the performance of the work. The Contractor shall also be responsible for all damages to persons or property that occur as a result of the Contractor's fault or negligence. The contractor shall also be responsible for all materials delivered and work performed until completion and acceptance of the entire work, except for any completed unit of work which may have been accepted under the contract;
>
>   52.236-10    OPERATIONS AND STORAGE AREAS (APR 1984)
>
>   (a) The Contractor shall confine all operations (including storage of materials) on Government premises to areas authorized or approved by the Contracting Officer. The Contractor shall hold and save the Government, its officers and agents, free and harmless from liability of any nature occasioned by the Contractor's performance;
>
>   52.236-13    ACCIDENT PREVENTION (NOV 1991) - ALTERNATE I (NOV 1991)
>
>   (a)  The Contractor shall provide and maintain work environments and procedures which will
>
>   (1) safeguard the public and Government personnel, property, materials, supplies, and equipment exposed to Contractor operations and activities
>
>   . . .
>
>   (f) Before commencing the work, the Contractor shall-
>
>   (1) Submit a written proposed plan for implementing this clause. The plan shall include an analysis of the significant hazards to life, limb, and property inherent in contract work performance and a plan for controlling these hazards; and
>
>   (2) Meet with representatives of the Contracting Officer to discuss and develop a mutual understanding relative to administration of the overall safety program.

control on Malouf; accordingly, Malouf bore the burden of establishing "plans, procedures, and organization necessary to produce an end product which complies with the contract requirements."[2]

The Accident Prevention Plan ("APP") submitted by Malouf in compliance with the regulation noted above assigned responsibility for assuring safe working conditions on the project superintendent. More specifically, the superintendent was to provide for inspection of equipment, training and daily inspections. The APP provided for the prompt remedy of any noted deficiencies and provided for a work stoppage when deemed necessary by the superintendent.

Corps employees had no authority to engage in the performance of any portion of the contracted work. In addition, Corp employees also lacked the authority to give Malouf or its subcontractors orders or directions relating to the manner in which the work was to be performed. Although the Corps assigned two employees, Samuel Horton and Paul Keene, to oversee the project, their duties were limited to ensuring that Malouf's performance complied with the specifications of the Contract.[3] According to Horton's affidavit, both he and Keene had "the authority to stop operations that were deemed to 'place an employee in imminent danger of serious injury or loss of life' or 'unreasonably endanger personnel or property.'" Exhibit 1 to defendant's Supplemental Motion to Dismiss at pp. 3; 10. Neither Horton nor Keene were onsite on the day of Irwin's

---

[2] The Quality Control Plan ("QCP") submitted by Malouf included an introductory paragraph which provided: "It is the intent of this plan to establish and explain how Malouf Construction Corp. plans to organize, <u>control</u>, and review all activities according to the plans and specifications provided by the U.S. Army Corps of Engineers with regard to quality for the above referenced project . . . ."

[3] Mr. Horton was the designated Contracting Officers' Representative (hereafter "COR") for the project; Mr. Keene was the government's Quality Assurance Representative (hereafter "QAR").

accident.[4]

The government responded to Irwin's Complaint by filing a Motion to Dismiss predicated on sovereign immunity; in the alternative, the United States seeks summary judgment based on the plaintiff's alleged inability to demonstrate an essential element of her negligence claim. After conducting immunity related discovery, the plaintiff responded to the instant motion. The matter has been fully briefed and is ripe for decision.

LEGAL ANALYSIS

I. Rule 12(b)(1) Motion

The essence of the government's motion is that this Court lacks subject matter jurisdiction over actions against the United States in the absence of a waiver of sovereign immunity.

A. The Standard

Motions to dismiss for lack of subject matter jurisdiction take one of two forms. The motion may attack the Complaint alone; or, the motion may assert that the actual factual basis precludes subject matter jurisdiction. See Oaxaca v. Roscoe, 641 F.2d 386, 391 (5th Cir. 1981).

In the first instance, a court is required to "assess whether the Plaintiff has alleged a sufficient basis of subject matter jurisdiction, taking all allegations in the Complaint as true." Id. Only where the plaintiff fails to allege a necessary element for subject matter jurisdiction is such a motion successful.

In the latter variety of 12(b)(1) motion, the Court is not bound to take the allegations of the Complaint as true, nor does the existence of disputed material facts necessarily preclude the Court

---

[4] According to Horton's affidavit, neither he nor Keene were present on the job site on a day to day basis for various reasons pertaining to the performance of administrative duties, responsibilities associated with other projects and the exercise of leave.

from resolving the jurisdictional merits of the case. See Williamson v. Tucker, 645 F.2d 404, 412-413 (5th Cir.), cert. denied, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). However, where a jurisdictional attack is intertwined with the merits of an FTCA claim, resolution of the jurisdictional issue on a 12(b)(1) motion is improper. Instead, the Court should examine the validity of such a claim pursuant to either Rule 12(b)(6) or Rule 56.

In the present case, resolution of the instant motion requires a fact-intensive inquiry aimed at determining whether the crux of the plaintiff's case is based on the direct negligence of a government employee, or whether it is a thinly veiled attempt to make an end-run around the independent contractor defense. Under the circumstances, dismissal pursuant to F.R.C.P. 12(b)(1) is inappropriate.

II. Rule 56 Motion for Summary Judgment[5]

In addition to the sovereign immunity defense noted above, the United States also seeks summary judgment on the ground that plaintiff cannot adequately meet her burden of establishing a duty on the part of the government; in the absence of such proof, her negligence claim must fail. The Court will address each of these arguments in turn.

A. The Standard

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Celotex Corporation v. Catrett, 477 U.S. 317, 322, 91

---

[5] The United States also moved to dismiss pursuant to F.R.C.P. 12(b)(6); however, inasmuch as the parties have submitted materials outside the pleadings, the Court will merely address the motion as one for summary judgment.

L.Ed.2d 265, 106 S. Ct. 2548 (1986). The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment. John v. State of La. (Bd. Of T. for State C. & U., 757 F.2d 698, 712 (5th Cir. 1985).

A judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 91 L.Ed.2d 202, 106 S. Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis, 799 F.2d 218, 222 (5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." Id. "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment. Phillips Oil Company, v. OKC Corporation, 812 F.2d 265, 272 95th Cir. 1987). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. See Celotex, 477 U.S. at 323, 106 S. Ct. at 2552. Topalian v. Ehrman, 954 F.2d 1125, 1138 (5th Cir. 1992).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. McPherson v. Rankin, 736 F.2d 175, 178 (5th Cir. 1984).

7

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. <u>Union Planters Nat. Leasing v. Woods</u>, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. <u>Topalian</u>, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." <u>John</u>, 757 F.2d at 708. "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment, " even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. <u>Id.</u> at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. <u>Ferguson v. National Broadcasting Co., Inc.</u>, 584 F.2d 111, 114 (5th Cir. 1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." <u>In Re Municipal Bond Reporting Antitrust Lit.</u>, 672 F.2d 436, 440 (5th Cir. 1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed. R. Civ. P. <u>See also Union Planters Nat. Leasing v. Woods</u>, 687 F.2d at 119.

While generally "[t]he burden to discover a genuine issue of fact is not on [the] court, (<u>Topalian</u>, 954 F.2d at 1137), "Rule 56 does not distinguish between documents merely filed and

those singled out by counsel for special attention–the court must consider both before granting a summary judgment." John, 757 F.2d at 712, quoting Keiser v. Coliseum Properties, Inc., 614 F.2d 406, 410 (5th Cir. 1980).

B.      Sovereign Immunity

Actions against the United States cannot be maintained absent a waiver of sovereign immunity. United States v. Mitchell, 445 U.S. 535, 538, 100 S. Ct. 1349, 63 L.Ed.2d 607 (1980). Waivers of sovereign immunity are to be strictly construed in favor of the sovereign and all ambiguities must be resolved in favor of the sovereign. United States v. Nordic Village, Inc., 503 U.S. 30, 33-34, 112 S. Ct. 1011, 117 L.Ed.2d 181 (1992). The terms of the government's consent to be sued in any court define that court's jurisdiction to entertain the suit. United States v. Sherwood, 312 U.S. 584, 586, 61 S. Ct. 767, 85 L.Ed. 1058 (1941).

The source of "consent" to be sued in the instant case is the FTCA. The FTCA provides a remedy for alleged injuries resulting from negligence by a federal agency or employee acting within the scope and course of his office of employment. 28 U.S.C. § 2679(b)(1). However, if the negligent act was not committed by an "employee of the Government" as defined under the FTCA, then the claim is not cognizable under the FTCA and must be dismissed. 28 U.S.C. § 2671. The United States urges the Court to find that this limitation bars plaintiff's suit under the circumstances of the present case.

Title 28, section 2671 of the United States Code defines the terms "agency" and "employee" as follows:

> As used in this chapter and sections 1346(b) and 2401(b) of this title, the term "Federal agency" includes the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States,

> and corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor with the United States.
>
> "Employee of the government" includes (1) officers or employees of any federal agency, members of the military or naval forces of the United States, members of the military or naval forces of the United States, members of the national Guard while engaged in training or duty under section 115, 316, 502, 503, 504, or 505 of title 32, and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation, and (2) any officer or employee of a Federal public defender organization, except when such officer or employee performs professional services in the course of providing representation under section 3006A of title 18.

28 U.S.C. § 2671.

Notably, § 2671 excludes "any contractor with the United States" as an employee or agency of the United States. Because this defense challenges subject matter jurisdiction, plaintiff bears the burden of proving under federal law that the allegedly negligent actor was an employee of the government, and not an independent contractor, within the meaning of the Act. Broussard v. United States, 989 F.2d 171, 176 (5th Cir. 1993); Duncan v. United States, 562 F. Supp. 96, 99 (E.D. La. 1983). The government urges the Court to grant summary judgment because plaintiff cannot meet this burden inasmuch as the negligent actor, if any, was an independent contractor of the United States.

Plaintiff's response refutes the government's contention with the assurance that the independent contractor defense is inapplicable in cases involving the direct negligence of government employees, in this case Samuel Horton and Paul Keene. For example, plaintiff urges that the Corps exercised extensive control over safety aspects of the project. Her evidence of that control is limited, however, to Horton's review and approval of Malouf's APP and related Activity Hazard Analysis (hereafter "AHA") reports. She urges that Horton approved the AHA's submitted for the clearing and grubbing phase despite the fact that said reports failed to address the guarding

necessary for the equipment.[6] With regard to Keene, plaintiff notes Keene's attendance at a September 18, 2003 preparatory phase meeting for the clearing and grubbing operation and his failure to disallow the use of unprotected track hoes for use in clearing and grubbing large trees. As a further matter, she points to those portions of Keene's inspection reports wherein he noted the issuance of reminders about safety concerns, including one incident which resulted in a brief work stoppage, and the contractors's efforts to cure those deficiencies as an acknowledgment of Keene's "duty" to ensure that machinery at the job site was properly equipped for the particular tasks for which it was intended.

However, in order to overcome the applicable legal test in cases involving the independent contractor defense, plaintiff must be capable of demonstrating that the contractor's "day-to-day" physical operations were controlled by the federal government. Cavazos v. United States, 776 F.2d 1263, 1264 (5th Cir. 1985). In order to be liable, the government must have supervised day-to-day operations or controlled the detailed physical performance of the contractor, which the Corps did not do. Id. Retention of the right to inspect progress, to provide advice on contract provisions, and to order work stopped should safety violations occur is insufficient to constitute the type of control necessary to impute liability to the government. Martinez v. United States, 661 F. Supp. 762, 763 (W.D. Tex. 1987).

As noted by the Court in Martinez, the only purpose any Corps employee served was to ensure that the work being performed under the contract by Malouf and its subcontractors was in compliance with the terms and specifications of the contract. Under the terms of its contract with

---

[6] The government's Safety and Health Requirements Manual provided for the use of machinery equipped with FOPS as appropriate to the nature of the clearing operations.

the Corps, Malouf was an independent, prime contractor for the construction of flood and grade control structures. Malouf itself supervised the nature, detail and method of all contracted for work. Malouf retained control over and responsibility for all on-site safety for personnel, including its subcontractors and their employees. The affidavit testimony of Horton and Keene established that the responsibility for determining the type of FOG to be utilized, if any, fell to the contractor. In addition, the duty to conduct daily safety inspections, and specifically, the inspection of machinery, also lay with the prime contractor, Malouf. Plaintiffs offered nothing to refute that testimony. In short, if a negligent act caused the decedent's accident, that negligent act is not chargeable to an employee of the United States. Accordingly, the plaintiff's claims against the United States must be dismissed.

C.  Failure to Prove an Essential Element

As an alternative argument, defendant also posits the plaintiff's inability to establish the necessary elements of her negligence claim as a basis for entry of judgment in the government's favor. Specifically, plaintiff urges the Court to find that the United States owed no duty to plaintiff under the facts presented by this case. After review of the controlling Fifth Circuit precedent, the Court concludes that the United States' position is correct. In <u>Beason v. United States</u>, 396 F.2d 2 (5th Cir. 1968), the Fifth Circuit refused to recognize a duty to maintain safe working conditions on the part of the government in the absence of specific contract provisions to that effect; furthermore, the Court further held: "'where the only Governmental undertaking relied upon is a safety inspection program in connection with work being performed by an independent contractor,' no liability under the Good Samaritan Doctrine for negligence performance of the contract by the independent contractor can attach to the United States. Likewise, in <u>Market Insurance Co. v. United States</u>, 415

F.2d 459, 464, (5th Cir. 1969), the Fifth Circuit held that "[i]ssuance of regulations and a manual relating to a safety program does not render the government liable for the death of an employee of an independent contractor under the Federal Tort Claims Act;" nor did the fact that the Corps "retained the right . . . to inspect the work and to see that the provisions of the contract were carried out" render the United States liable. Despite plaintiff's valiant effort to distinguish the above-referenced cases and to point toward more favorable persuasive authority from other jurisdictions, the Court finds the above cases compel the entry of summary judgment in favor of the defendant.

## CONCLUSION

Based on the foregoing facts and analysis, the Court finds that the defendant's motion is well-taken and should be granted. A judgment will issue accordingly.

This, the 12th day of September, 2007.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE